IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JERI BEARD   PLAINTIFF

V.   No. 1:10CV145-A-D

CITY OF TUPELO, MISSISSIPPI   DEFENDANT

## MEMORANDUM OPINION

Before the Court is Defendant's Motion to Dismiss [5]. After reviewing the motion, responses, rules, and authorities, the Court finds as follows:

## I. BACKGROUND

In the spring of 2009, Plaintiff experienced leaks and water damage in her basement. She contracted with plumber Steve Megginson and Big O Services, Inc., to repair the problems in her basement. Plaintiff asserts that Megginson informed her that the problem was not simply a plumbing issue, and that the leaks were the result of a defective roof and a new roof was needed. Megginson allegedly represented to Plaintiff that he was also in the roofing business. On May 28, 2009, Plaintiff contracted with Megginson to put a new roof on her house and to perform plumbing renovations in her basement. Plaintiff claims that she paid Megginson $18,500 before any work was performed, and that she paid him $28,719 in all for the work he contracted to perform. Plaintiff alleges that Megginson refused to complete the roofing job, and that she was forced to pay someone else $1,185 to finish the work.

Plaintiff contends that, unbeknownst to her, Megginson did not actually possess a license as required by Mississippi Code Annotated Section 73-59-3 and Tupelo City Ordinance 7-246 to perform residential construction or improvement. Plaintiff alleges that due to Megginson's

"relationship" with City of Tupelo employees, Megginson engaged in a practice of obtaining construction permits from the City by having the permits issued in the name of a licensed contractor. In this case, Plaintiff claims that Megginson used the name "Steve Hudson," a retired contractor and licensed builder. City employees allegedly knew Megginson was unlicensed and knew that he used the name of other licensed contractors in order to obtain building permits to perform residential building work within the City. Due to such alleged actions by City employees, Plaintiff asserts that her federal due process rights were violated. On July 9, 2010, Defendant filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. STANDARD OF REVIEW

A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001).

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981). Given the burden of proof on the party

asserting jurisdiction, the plaintiff must submit evidence to prove, by a preponderance of the evidence, that the court does have jurisdiction based on the complaints and evidence. Id.

B. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Twombly abrogated the Supreme Court's prior statement in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Twombly, 550 U.S. at 562-63, 127 S. Ct. 1955. To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Elsensohn v. St. Tammany Parish Sheriff's Office, 530 F.3d 368, 372 (5th Cir. 2008).

In Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court elaborated on the pleading standards discussed in Twombly. The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 555, 127 S. Ct. 1955). With respect to the "plausibility" standard described in Twombly, Iqbal explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S.

at 556, 127 S. Ct. 1955). The Iqbal Court noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). The Court concluded that "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." Id.

The Supreme Court's examination of the issue in Iqbal provides a framework for examining the sufficiency of a complaint. First, the district court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

### III. ANALYSIS AND DISCUSSION

A. Fourteenth Amendment Due Process Claims

Plaintiff asserts that her due process property rights guaranteed by the Fourteenth Amendment were violated when City of Tupelo employees issued a building permit in the name of "Steve Hudson" – a retired licensed contractor – to Steve Megginson, allegedly knowing that Megginson was not Steve Hudson and that Megginson was not licensed under Mississippi law.

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Due Process Clause has procedural and substantive components. "Substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, [whereas] procedural due process prohibits arbitrary and unfair

4

deprivations of protected life, liberty, or property interests without procedural safeguards." Howard v. Grinage, 82 F.3d 1343, 1350 (6th Cir. 1996).

At the outset, the Court notes that it is unclear whether Plaintiff is claiming a substantive due process right or a procedural due process right, or both. Plaintiff asserts that Defendant deprived her of a "property right without giving her any notice of hearing or hearing." This would implicate procedural due process. However, right after stating this, Plaintiff claims that such "substantive due process . . . prohibits arbitrary governmental action." As such, the Court analyzes both substantive and procedural due process.

*1. Substantive Due Process*

The substantive component of the Due Process Clause protects those rights that are fundamental, that is rights that are "implicit in the concept of ordered liberty." Palko v. Conn., 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937). For example, the Supreme Court has determined that most, yet not all, of the rights enumerated in the Bill of Rights are fundamental as well as certain unenumerated rights, such as the right of privacy. See generally, e.g., Planned Parenthood v. Casey, 504 U.S. 883, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). A finding that a right merits substantive due process protection means that the right is protected against "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). Although the Supreme Court has extended substantive due process protection to certain unenumerated rights, it has refused to extend Fourteenth Amendment coverage to a host of other areas. In fact,

> the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

5

Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) (citation omitted). For example, tort law and public employment law remain largely outside the scope of substantive due process jurisprudence. See Daniels, 474 U.S. at 332, 106 S. Ct. 662; Bishop v. Wood, 426 U.S. 341, 350, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976) and Board of Regents v. Roth, 408 U.S. 564, 577-78, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

Plaintiff's substantive due process claim is grounded in a state statute and city ordinance. However, any right or interest – if one exists – that could be created or protected by Mississippi Code Annotate Section 73-59-3 or Tupelo City Ordinance No. 7-246 cannot be characterized as the type of fundamental right or interest protected by the substantive due process component of the Fourteenth Amendment. While Plaintiff rightly asserts that the Due Process Clause prevents arbitrary governmental action, the substantive component of due process is not implicated unless Plaintiff first presents a violation of her substantive, fundamental rights. See, e.g., American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 57, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"). Not all "rights" are protected as "fundamental rights" by the Due Process Clause. Where an "alleged right [ ] cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental," substantive due process does not apply. Reno v. Flores, 507 U.S. 292, 303, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993) (internal quotation omitted). State-created rights, like the ones allegedly created by the state statute and city ordinance in this case, "do not rise to the level of 'fundamental' interests protected by substantive due process." Id. This is so because fundamental rights "are created only by the Constitution." Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 229, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring); see also Woods v. City of Michigan

City, Ind., 940 F.2d 275, 283 (7th Cir. 1991) ("The several states are free to offer protections to their citizens which the federal constitution does not. But when a state promises substantive protections not guaranteed by the federal constitution and backs up that promise in writing – by passing a statute . . . – the promise is its own. And if the state welshes on its promise . . . substantive rights may have been denied under state law. But no substantive rights have been denied as a matter of federal law"); McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994); Mangels v. Pena, 789 F.2d 836, 839 (10th Cir. 1986); DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 599 (3d Cir. 1995), *abrogated on other grounds by* United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392 (3d Cir. 2003).

Further, Plaintiff is not challenging the constitutionality of the state statute or city ordinance in this case. Nor is she asserting that her due process rights were violated by any form of a state or local legislative act. Rather, Plaintiff brings this action due to an alleged *violation* of the statute and ordinance. That is, Plaintiff's Complaint contends she was harmed because City employees allegedly violated state law by giving Megginson a building permit knowing he was not licensed. However, as the Fifth Circuit noted in McDowell v. State of Texas,

> A right to have state (or city) laws obeyed is a state, not a federal right." Love v. Navarro, 262 F. Supp. 520 (D.C. Cal. 1967). "Mere violation of a State statute does not infringe the federal Constitution." Snowden v. Hughes, 321 U.S. 1, 64 S. Ct. 397, 88 L. Ed. 497 (1944); cf. Gentry v. Howard, 288 F. Supp. 495 (E.D. Tenn. 1968). Even though it is patent that the amorphous and protean contours of substantive due process under the Fourteenth Amendment extend to all citizens in all sorts of conditions and circumstances, it is equally axiomatic that federal jurisdiction under § 1343 and 42 U.S.C.A. § 1983 cannot be extended to that purely local squabble by the mere invocation of the generalized protection which these words of the amendment confer.

465 F.2d 1342, 1346 (5th Cir. 1971). Other courts have also repeatedly held that a mere violation of state law affecting an alleged protected property right is insufficient to constitute a substantive due process violation. See Archie v. City of Racine, 847 F.2d 1211, 1217 (7th Cir. 1988), *cert.*

*denied*, 489 U.S. 1065, 109 S. Ct. 1338, 103 L. Ed. 2d 809 (1989) (under substantive due process, "the violation of state law is not itself the violation of the Constitution . . . [a] state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules."); see also Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992); Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1991); HVR, Inc. v. City of Newport, Rhode Island, 145 F. Supp. 2d 177, 181 (D. R.I. 2001); Aegis of Ariz., L.L.C. v. Town of Marana, 81 P.3d 1016, 1029 (Ariz. Ct. App. 2003) (citing cases).

The Fourteenth Amendment is not implicated simply because a plaintiff alleges that the state or city violated its own laws. The substantive due process clause does not "*ex proprio vigore* extend to [all individuals] a right to be free of injury wherever the State [or City] may be characterized as the tortfeasor . . . such a reading would make of the Fourteenth Amendment a font of tort law." Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 115, 47 L. Ed. 2d 405 (1976). For these reasons, Plaintiff fails to present a plausible substantive due process claim.

### 2. *Procedural Due Process*

The procedural component to the Due Process Clause refers to the procedures that the government must follow before it takes an action that could deprive a person of life, liberty, or property. See generally Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). Procedural due process is based on the concept of fundamental fairness. Unlike its substantive counterpart, procedural due process limitations do not require that the government refrain from making a substantive decision to infringe upon a person's life, liberty, or property interest. Procedural due process merely requires that the government provide "due process"

before making such a decision. Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986). When the government must provide such process, it must supply certain basic safeguards such as notice of the charges or issue, see Mullhane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950), the opportunity for a meaningful hearing, see Goldberg, 397 U.S. 254, 90 S. Ct. 1011, and an impartial decision maker, see Gibson v. Berryhill, 411 U.S. 564, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973). Such procedural safeguards are the touchstone of due process.

The Supreme Court has held that the Constitution does not create "property" interests, but rather that such interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." Roth, 408 U.S. at 577, 92 S. Ct. 2701. In other words, the Constitution provides protection for property interests, but the interests themselves are not created by the Constitution. Thus, for procedural due process purposes, these property rights can be created by state statute, local ordinance or rule, written contract, or mutually explicit understanding under state law as an implied contract. See Strother v. Columbia-Brazoria Indep. Sch. Dist., 839 F. Supp. 459, 461 (S.D. Tex. 1993), *aff'd*, 32 F.3d 565 (5th Cir. 1994). As such, Mississippi statutes and City ordinances can indeed create property rights that ignite procedural – as opposed to substantive – due process safeguards. However, in the end, whether or not a property interest rises to the level of one protected by the Fourteenth Amendment is a matter of federal constitutional law. See Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 757, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005).

Mississippi Code Annotated Section 73-59-3, the statute at issue here, states that "persons who perform residential construction or residential improvement shall be licensed. . . ." Plaintiff claims that both this statute and its counterpart city ordinance offer *all* state and local residents

9

constitutionally-protected property rights. However, Plaintiff fails to cite to a part of the statute or ordinance or a single case that would support her position. While the Court acknowledges that licensing statutes are generally in place to ensure that professionals meet certain standards, see MGM Grand Hotel, Inc. v. Imperial Glass Co., 533 F.2d 486, 489 (9th Cir. 1976), – thus protecting the public at large – the Court is unconvinced that this Mississippi licensing statute was intended to offer a federal due process property interest in every single Mississippi resident, solely by their residency status in the state.

In order for a state or local law to create a constitutionally protected interest, it must employ "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed . . . and that [the challenged action] will not occur absent specific substantive predicates . . . ." Colon v. Schneider, 899 F.2d 660, 667 (7th Cir. 1990) (quoting Hewitt v. Helms, 459 U.S. 460, 471-72, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983)). The statute and ordinance in this case provide no procedures that apply to Plaintiff. The "procedural" process provided for by the statute is one for residential contractors – the statute merely governs when a contractor must be licensed. The only actual argument Plaintiff makes as to how Section 73-59-3 creates a property right in all Mississippi residents is that the statute contains mandatory language (i.e., "shall"), requiring that residential builders and contractors must be licensed. The statute leaves no discretion on the part of the State Board of Contractors in making this decision. Plaintiff makes this argument because, in analyzing procedural due process, the Supreme Court has found that an entitlement exists where there are "explicitly mandatory language in connection with . . . specific substantive predicates" designed to limit official discretion. Hewitt, 459 U.S. at 472, 103 S. Ct. 864. Thus, if a statute contains mandatory, substantive criteria limiting the government's discretion, then one's expectation is more likely to be classified as

reasonable and subject to procedural due process protections. See Irving v. Thigpen, 732 F.2d 1215, 1217 (5th Cir. 1984). In the absence of mandatory, substantive criteria, or where government discretion is unfettered, the interest is more likely to be interpreted as an abstract desire not subject to procedural due process protections. Id. While the Plaintiff is correct in asserting that Section 73-59-3 contains such mandatory language, mandatory language alone does not automatically confer procedural due process. See Kraushaar v. Flanigan, 45 F.3d 1040, 1048-49 (7th Cir. 1995) (finding that "state . . . rules and regulations containing such [mandatory] language [do not] automatically create legitimate claims of entitlement triggering the procedural protections of the due process clause . . . Some statutes and regulations create only guidelines that direct the manner in which state personnel exercise their discretion to perform certain activities . . . These type of guidelines do not create substantive rights or legally enforceable expectancies.").

To qualify for due process, an individual must have a "legitimate expectation" to receive a benefit. Roth, 408 U.S. at 577-78, 92 S. Ct. 2701 (explaining that there has to be "more than an abstract need or desire" for the benefit). Many statutes contain mandatory language, but not every legislative decree on the books containing the word "shall" vests Plaintiff with a due process right. The statue's language here *regulates* residential builders and contractors – it is void of any language that would confer a type of procedural legal entitlement upon the Plaintiff. The classic types of cases in which procedural due process applies are, for example, civil rights proceedings challenging state action terminating a teacher's employment contract when the teacher alleges that the termination was in reprisal for his exercise of protected First Amendment speech, see Perry v. Sindermann, 408 U.S. 593, 92 S. Ct. 2513, 33 L. Ed. 2d 570 (1972); denial of a state welfare recipient's receipt of welfare funds without benefit of certain due process

procedural rights guaranteed the recipient under the Fourteenth Amendment, see Goldberg v. Kelly, 397 U.S. 254, 89 S. Ct. 1469, 22 L. Ed. 2d 751 (1970); and a state's revocation of parole without granting the parolee minimal procedural due process rights as guaranteed by the Fourteenth Amendment, see Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Here, unlike the examples cited above, the Court is unable to find any type of protected property interest vested in Plaintiff created by Section 73-59-3. That is, the Court is unable to find support for Plaintiff's notion that there is a constitutionally-protected right to be free from having your home worked on by a contractor who is unlicensed under state and local law. Rather than creating a property right, this statute instead imposes criminal penalties and fines to such residential builders who violate the licensing requirement. MISS. CODE. ANN. § 73-59-9; see also Johansson v. Emmons, 2010 WL 457335, at *5 (M.D. Fla. Feb. 4, 2010) (finding that a Florida statute protecting the confidentiality of telephone conversations does not give a plaintiff whose phone calls were unlawfully intercepted a procedural due process property right, as the statute instead imposes criminal penalties upon individuals who violate its mandates).

Furthermore, even if Plaintiff did have some type of unidentified property right, the Court is unaware as to what type of procedural due process Plaintiff is asserting she should have been afforded. While Plaintiff declares that she was deprived of her right to a "notice of a hearing or hearing," her entire Complaint is grounded in an alleged violation of the law by City employees. Therefore, by Plaintiff's logic, before these employees acted unlawfully, they should have first stopped and offered all Mississippi residents whose rights might be violated "notice of a hearing

or hearing" on the issue. Such a suggestion is puzzling. Accordingly, the Court finds that Plaintiff has failed to state a claim that plausibly entitles her to procedural due process.[1]

B. State Law Claims

Plaintiff also alleges state law claims under the Mississippi Tort Claims Act. However, all of Plaintiff's federal claims have been dismissed. As such, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims and will accordingly dismiss these claims without prejudice. See 28 U.S.C. § 1367(c)(3); Certain Underwriters at Lloyd's, London v. Warrantech Corp., 461 F.3d 568, 578 (5th Cir. 2006) (explaining "it is our 'general rule' that courts should decline supplemental jurisdiction when all federal claims are dismissed or otherwise eliminated from a case").

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is granted.

So ordered on this, the __16th__ day of December, 2010.

/s/   Sharion Aycock
**UNITED STATES DISTRICT JUDGE**

---

[1] In Archie v. City of Racine, the plaintiff brought a federal due process claim against the city due to a fire department dispatcher's failure to provide rescue services as requested. 847 F.2d 1211 (7th Cir. 1988). In dismissing the claim, the Seventh Circuit noted that "[i]f, as the plaintiffs believe, [the dispatcher] violated his duties under state law, the opportunity to press that claim in *state* court *is* due process of law." Id. at 1217 (emphasis added). The court further reasoned that "[i]t is hardly possible to hold hearings in advance to decide whether fire dispatchers will turn deaf ears to cries of distress." Id. The Seventh Circuit's rationale is equally applicable in this instance, as it is "hardly possible" to hold hearings to decide whether city employees will violate state and local licensing laws.